UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| MICHAEL JOSEPH SCHWERDTFEGER,<br><br>                            Plaintiff,<br><br>v.<br><br>PARAMO, et al.,<br><br>                            Defendants. | Case No.: 19-cv-02255 JLS (JLB)<br><br>**REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>**[ECF No. 9]** |
|---|---|

Before the Court is a motion to dismiss filed by Defendant R. Buckel ("Defendant"). (ECF No. 9.) Defendant moves to dismiss the complaint filed by Plaintiff Michael Joseph Schwerdtfeger ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the complaint fails to state an Eighth Amendment claim for deliberate indifference under 42 U.S.C. § 1983. (*Id.* at 1.) Plaintiff filed an opposition (ECF No. 11), and Defendant filed a reply (ECF No. 12).

Pursuant to 28 U.S.C. § 636(b) and Civil Rule 72.3 of the Local Rules of Practice for the United States District Court for the Southern District of California, this Report and Recommendation is submitted to United States District Judge Janis L. Sammartino. After

1

a thorough review of the parties' filings, and for the reasons discussed below, the Court respectfully **RECOMMENDS** the motion to dismiss be **GRANTED** with leave to amend.

## I. BACKGROUND

Plaintiff, proceeding *pro se* and *in forma pauperis*, is a state prisoner currently incarcerated at the California Health Care Facility in Stockton, California. (*See* ECF Nos. 1 ("Compl."); 4.) On November 25, 2019, Plaintiff filed a complaint alleging the following:

In late 2016, the "E Yard" at R.J. Donovan Correctional Facility ("RJD") was "toured, inspected, and cleared for occupancy by management staff," including Defendant, who was the Associate Warden of Business Services. (Compl. at 2–3.) On or about January 27, 2017, Plaintiff was transferred to RJD and assigned to the E Yard, Building 24, Dorm 102-3L. (*Id.* at 3.) At the time of transfer, the dorm doors had no "closing devices" or "inside handles." (*Id.*) Plaintiff claims that "[w]e all complained to building staff and [were] told management was looking for funding to install this hardware." (*Id.*)

On November 25, 2018, the tip of Plaintiff's left index fingertip—3/8 of an inch—was amputated when he attempted to close a dorm door. (*Id.* at 3–4.) Plaintiff claims the keypad used to lock and unlock the doors had been installed flush with the door when it should have been an inch back from the door, and the manner in which the keypad was installed created the "perfect shear, which amputated [Plaintiff's] fingertip." (*Id.* at 6.)

Plaintiff contends his injury was the result of "nothing less than deliberate indifference" because nearly three months earlier, on September 1, 2018, another E Yard inmate named Tarkington severed the tip of his finger in a similar manner while attempting to close a dorm door. (*Id.* at 3, 12–13.)[1] When Tarkington filed a California Department of Corrections and Rehabilitation ("CDCR") 602 Inmate Appeal regarding his injury, complaining it was caused by the lack of interior door handles, Defendant partially granted

---

[1] The Court may consider exhibits attached to the complaint on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

the appeal at the first level on September 24, 2018, and notified Tarkington that "Plant Operations [was] working with Facilities Management to procure funding for the door handles to be installed." (*Id.* at 12–13.)

Plaintiff "did not know about inmate Tarkington's injury until after [his own] occurred." (*Id.* at 4.) No warning signs were ever posted. (*Id.* at 3, 5.) Plaintiff claims that "if warning signs had been posted" or if E Yard had not been "cleared for occupancy until self-closing and[/]or inside door handles were installed," his injury may have been prevented. (*Id.* at 4.)

Plaintiff filed his own CDCR 602 Inmate Appeal, Log # RJD-E-18-8043, on December 10, 2018, requesting that inside door handles or an automatic door closing device be installed to prevent future injury to himself and other inmates on E Yard. (*Id.* at 16–17.) The appeal was partially granted at the First Level by Defendant and Plaintiff was given the same response as Tarkington: "Plant Operations is working with Facilities Management to procure funding for the door handles to be installed." (*Id.* at 19.) In Plaintiff's second level response, dated March 21, 2019, it was noted that the proposal for door handles to be installed was currently in the "Facilities Planning Construction Management branch, Office of Architect and Engineering for design approval." (*Id.* at 21.)

In his complaint, Plaintiff alleges that Warden Paramo, Associate Warden R. Buckel, and an unknown CDCR agent who is the Supervisor of Plant Operations violated his Eighth Amendment rights. (*Id.* at 2–3.) After screening Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court dismissed Warden Paramo and ordered service on Associate Warden R. Buckel. (ECF No. 4.)

Defendant now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*See* ECF No. 9.) Plaintiff opposes. (ECF No. 11.)[2]

---

[2] In his opposition, Plaintiff argues the Court already ruled on this matter during screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. (ECF No. 11 at 3.) However,

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

On a motion to dismiss for failure to state a claim, the question is not whether the plaintiff will ultimately prevail at trial, but whether the complaint is sufficient to meet the federal court's pleading standards as explained in *Twombly* and *Iqbal*. *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Two tenets underlie *Twombly*: (1) the reviewing court must accept all *factual* allegations as true (legal conclusions and threadbare recitations of the cause of action's elements are not presumed true); and (2) the reviewing court must determine if those factual allegations, taken as true, plausibly suggest entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Twombly*, 550 U.S. at 555–58). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

A complaint must contain more than facts that merely create a suspicion of a legally cognizable cause of action; it must set forth facts that raise the alleged wrongdoing above the speculative level. *Twombly*, 550 U.S. at 555. A claim is plausible on its face when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the alleged wrongdoing. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). A complaint alleging facts that are "merely consistent with" a defendant's liability does not

---

"the *sua sponte* screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007). Therefore, surviving screening does not preclude a complaint from being subject to a Rule 12(b)(6) motion.

cross the threshold between possibility and plausibility entitling the plaintiff to relief. *Moss*, 572 F.3d at 969 (quoting *Twombly*, 550 U.S. at 557).

### B. Standards Applicable to *Pro Se* Litigants

*Pro se* complaints are to be construed liberally, particularly in a civil rights case. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "[H]owever inartfully pleaded," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *pro se* complaints can only be dismissed if the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted). Courts must use common sense and reasonable factual inferences when reading *pro se* complaints. *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974). However, when construing the plaintiff's claims liberally, the court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Before dismissing a *pro se* complaint for failure to state a claim, the court must give the plaintiff a statement of the complaint's deficiencies and an opportunity to amend unless it is absolutely clear from the complaint that the deficiencies cannot be overcome with amendment. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623–24 (9th Cir. 1988); *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

## III. DISCUSSION

### A. Section 1983 Standard

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006); *see also Graham v. Connor*, 490 U.S. 386, 393–94 (1989). It provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

> injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The purpose of Section 1983 "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).

"To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Dismissal of a Section 1983 claim "following a Rule 12(b)(6) motion is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

### B. Eighth Amendment Claim

#### 1. Legal Standard

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *see also* U.S. Const. amend. VIII. Incarcerated persons "have a constitutional right to safe conditions of confinement." *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985). "This is required because inmates, by reason of their confinement, cannot provide for their own safety." *Id.* (citations omitted); *see also Morgan*, 465 F.3d at 1045 ("Incarceration itself renders prisoners dependent upon their keepers and 'strip[s] them of virtually every means of self-protection.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994))).

"Not every deviation from ideally safe conditions amounts to a constitutional violation . . . ." *Hoptowit*, 753 F.2d at 784. "However, the Eighth Amendment entitles inmates in a penal institution to an adequate level of personal safety." *Id.*; *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) ("Conditions [of confinement] must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment.").

For an inmate to bring a valid Section 1983 claim against a prison official for a violation of the Eighth Amendment, he must first "objectively show that he was deprived of something 'sufficiently serious.'" *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). "A deprivation is sufficiently serious when the prison official's act or omission results 'in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Next, the inmate must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Foster*, 554 F.3d at 812 (citing *Farmer*, 511 U.S. at 834). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The prison official "need not have intended any harm to befall the inmate; 'it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 837).

2. Analysis

    a. *Sufficiently Serious Deprivation*

For a claim based on a failure to prevent harm, an "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" to establish that the alleged deprivation was objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. In the Ninth Circuit, a single dangerous condition or defective device, without any other conditions contributing to the threat to an inmate's safety, does not create an objectively, insufficiently humane condition violative of the Eighth Amendment. *Osolinski v. Kane*, 92 F.3d 934, 938 (9th Cir. 1996); *see also Turman v. Borders*, No. EDCV-18-1533-PSG (JEM), 2020 WL 3086265, at *4 (C.D. Cal. Mar. 16, 2020) (collecting cases), *adopted by*

2020 WL 3086225 (C.D. Cal. June 10, 2020); *cf. Wallace v. Sherman*, No. 1:20-CV-00213-EPG (PC), 2020 WL 4193968, at *4 (E.D. Cal. July 21, 2020), *adopted by* 2020 WL 5237603 (E.D. Cal. Sept. 2, 2020) ("In the Ninth Circuit, a slip-and-fall claim is not cognizable unless there are exacerbating conditions.") (collecting cases).

Rather, an inmate asserting an Eighth Amendment claim arising out of a prison safety hazard must show "danger-plus," *i.e.*, not only the existence of a threat to the inmate's safety, but also some additional condition exacerbating that threat. *Morgan*, 465 F.3d at 1047 (citing *Osolinski*, 92 F.3d at 938). An exacerbating condition includes any condition which renders an inmate unable to provide for his own safety in the sense that it precludes him from avoiding the dangerous condition or renders him unable to perceive its defective condition. *Osolinski*, 92 F.3d at 938 (no exacerbating conditions when inmate was able to see and avoid defective oven door in the family visiting unit which fell off and burned his arm); *see also Morgan*, 465 F.3d at 1047 (hazard exacerbated when prison official compelled inmate to continue working with dangerously defective equipment); *Hoptowit*, 753 F.2d at 784 (safety hazards in the prison's occupational areas were exacerbated by inadequate lighting).

Here, Plaintiff was transferred to RJD and assigned to a dorm in E Yard in January 2017. (Compl. at 3.) At the time of transfer, the dorm doors in E Yard had no closing devices or inside handles and multiple inmates complained to building staff. (*Id.*) Whether the inmates complained because they saw the lack of closing devices or inside handles as a "dangerous condition" or simply a nuisance is unclear. Regardless, Plaintiff does not allege any known serious injury resulting from the dorm doors for nearly two years after Defendant "toured, inspected, and cleared" E Yard for occupancy. (*Id.* at 3–4, 12–13.)

The absence of serious injuries for that extended period indicates that the lack of closing devices or inside handles did not render the inmates unable to provide for their own safety. Notably, Plaintiff's allegations suggest that the inmates were able to perceive this

condition and avoid serious injuries for nearly two years.³ However, Plaintiff's allegations also suggest that he and the other inmates could not feasibly avoid using the doors that presented the danger. The inmates' inability to avoid using the dorm doors is arguably an exacerbating condition. *See Morgan*, 465 F.3d at 1047 (finding a constitutional violation where an inmate alerted his supervisor to a dangerous defect in the equipment he was using as part of his prison employment and he was ordered to continue working with the defective equipment); *Osolinski*, 92 F.3d at 939 (favorably citing *Gill v. Mooney*, 824 F.2d 192 (2d Cir. 1987), as an example of a "danger-plus" condition, where the prison official ordered the inmate to remain on a defective ladder which the prison official knew to be unsafe and an immediate threat to the inmate thus "exacerbate[ing] the inherent dangerousness of the defective ladder, [and] rendering the ladder a serious safety hazard"); *cf. Reyes v. Brown*, No. 16CV84-JLS (BLM), 2017 WL 1355004, at *6 (S.D. Cal. Apr. 4, 2017), *adopted by* 2017 WL 2928777 (S.D. Cal. July 10, 2017) (finding the plaintiff failed to plead any conditions in a trip-and-fall case which rendered him unable to provide for his own safety "as he was not precluded from walking around any cracks or avoiding the damaged portions of the track and he was not required to jog"); *Brown v. Perez*, No. ED CV 14-2421 CJC (JEM), 2016 WL 7975264, at *7-8 (C.D. Cal. Dec. 16, 2016) (finding the plaintiff failed to allege an exacerbating condition where he did not allege "any additional conditions that precluded him from avoiding the damaged asphalt or rendered him unable to see its cracks and holes" and distinguishing *Morgan* because the plaintiff was not "compelled to place himself in a dangerous situation").

---

³ In his opposition, Plaintiff noted that some dorms tried string and torn cloth to assist with closing the door, but "most dorms chose to just reach around, grab the door, and pull it closed before your fingers were caught." (ECF No. 11 at 4.) He added that "several times" injuries occurred when closing the door in this manner, but the injuries were not severe enough to be reported. (*Id.* at 4–5.)

As set forth below, however, even if the Court were to find that Plaintiff has sufficiently alleged an objectively serious deprivation, he has not sufficiently pled that Defendant was deliberately indifferent.

          b.    *Deliberate Indifference*

Defendant inspected the facility and knew in late 2016 the dorm doors lacked interior handles or closing devices. There are no allegations, however, that a substantial risk of serious harm posed by the doors was obvious such that Defendant should have had knowledge of it based on her tour of the facility[4] or that Defendant was informed of any substantial risk of serious harm posed by the doors before Tarkington's CDCR 602 appeal was filed.[5] Even after Tarkington filed his appeal and Defendant arguably had knowledge of a substantial risk of serious harm, Plaintiff has failed to sufficiently allege that Defendant failed to act reasonably despite this knowledge. Rather, Plaintiff alleges that Defendant responded to the appeal filed by Tarkington, and the one subsequently filed shortly thereafter by Plaintiff, by stating: "Plant Operations is working with Facilities Management to procure funding for the door handles to be installed." (Compl. at 12–13, 19.) A subsequent appeal response indicated that the installation process had advanced to the design planning phase. (*See id.* at 21.) Thus, Plaintiff's allegations and the attachments to the complaint suggest that Defendant, once made aware of the risk, reasonably acted to address that risk.[6] *See Farmer*, 511 U.S. at 844 ("[P]rison officials who actually knew of

---

    [4]    *See Farmer*, 511 U.S. at 842 (explaining that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious").

    [5]    In his opposition, Plaintiff states that Defendant "had certain knowledge of the risk of harm as of the Tarkington incident[.]" (ECF No. 11 at 9.)

    [6]    *See, e.g.*, *Brown*, 2016 WL 7975264, at *7 (finding the prison staff's responses to the plaintiff's grievances about broken asphalt on the prison yard demonstrated there was no deliberate indifference to a substantial risk of serious harm as the asphalt was scheduled to be replaced and was only awaiting design plans and funding); *Townsel v. Quinn*, No. C07-0482-JLR, 2008 WL 650284, at *3 (W.D. Wash. Jan. 24, 2008), *adopted by* 2008 WL 656272 (W.D. Wash. Mar. 7, 2008), *aff'd*, 369 F. App'x 830 (9th Cir. 2010) (finding the defendant was not deliberately indifferent where the plaintiff filed grievances

a substantial risk to inmate health or safety may be found free from liability if they responded *reasonably* to the risk, even if the harm ultimately was not averted." (emphasis added)).

In his opposition, Plaintiff complains about the speed of the process to procure funding (ECF No. 11 at 5–6), but there are no allegations suggesting that Defendant delayed the procurement process or that her response of seeking funding for door handles was unreasonable. Plaintiff further claims that after Tarkington's incident Defendant should have posted signs or made an announcement warning of the risk of serious harm posed by the dorm doors, suggesting that such warnings may have prevented his injury. (*See* Compl. at 3–5; ECF No. 11 at 9, 13.) However, Plaintiff simultaneously claims that he and the other inmates had always been aware that the dorm doors posed a risk of injury and had managed to avoid serious injury for nearly two years. (*See* Compl. at 3–5; ECF No. 11 at 4–5.) Therefore, even accepting as true Plaintiff's allegation that he would have exercised *greater* caution if Defendant had posted signs or given a warning, the Court finds that Plaintiff has still failed to plausibly allege that Defendant was deliberately indifferent to a substantial risk of serious harm in violation of the Eighth Amendment.

For the foregoing reasons, the Court finds that Plaintiff has failed to sufficiently allege an Eighth Amendment claim against Defendant for deliberate indifference.

### 3. Qualified Immunity

Defendant further argues that she is entitled to qualified immunity, asserting that no Ninth Circuit or Supreme Court case law establishes "'beyond debate' that an inmate is entitled to ideal, defective-free prison conditions." (ECF No. 9 at 9–10.)

---

following his fall in the shower and the "responses to these grievances reveal that after plaintiff's fall, the cleaning procedures were modified, strips were welded over the sharp edges of the metal plates to address the cut hazard, and a plan was implemented to address the shower shoe issue").

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 4–5 (2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted)). Courts analyze two prongs to determine whether qualified immunity applies: officers have qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). This standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Here, although the Court has determined that Plaintiff has not sufficiently alleged a violation of the Eighth Amendment, the Court will still turn to address the question of whether the right was clearly established at the time of the events alleged in the complaint. *See Osolinski*, 92 F.3d at 937 (the focus of an Eighth Amendment qualified immunity analysis is on the objective requirement).

Plaintiff has not identified, and the Court has not located, a case in which the lack of door handles or closing devices on a cell door to assist inmates in opening and closing the door safely implicates the Eighth Amendment. Even if the Court broadens the scope of the question,[7] analogous case law suggests that an allegedly dangerous condition in a prison cell caused by the lack of equipment to assist an inmate in completing a daily task safely does not rise to the level of a constitutional violation. For example, "[m]ultiple district

---

[7] Notably, courts must not "define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted).

courts in the Ninth Circuit have held that the failure of prison officials to equip prison cells with a ladder or some other 'safety apparatus' to assist inmates in ascending to and descending from bunk beds does not amount to the deprivation of 'a minimally civilized measure of life's necessities.'" *Millsap v. Cate*, No. 2:10-CV-02008-MCE, 2012 WL 1037949, at *4–6 (E.D. Cal. Mar. 27, 2012) (granting qualified immunity because it was not "clearly established that top bunks not equipped with ladders or other safety features pose a substantial risk of serious harm that society would consider so grave as to amount to an Eighth Amendment's violation"); *see also Meier v. Correct Care Sols.*, No. C17-5248 BHS-KLS, 2017 WL 1364649, at *3 (W.D. Wash. Apr. 14, 2017) (finding that "ladderless bunk beds do not satisfy the objective prong for an Eighth Amendment violation"); *Jenkins v. Fischer*, No. 9:08-CV-0045 GLS RFT, 2010 WL 6230517, at *5–7 (N.D.N.Y. Sept. 8, 2010), *adopted by* 2011 WL 978762 (N.D.N.Y. Mar. 17, 2011) (finding the defendants entitled to qualified immunity because it was not clearly established that the absence of ladders in double-bunked cells violated the Eighth Amendment) (collecting cases).[8] Because Plaintiff has failed to establish either prong of the qualified immunity analysis, the Court finds that Defendant is entitled to qualified immunity on Plaintiff's Eighth Amendment claim.[9]

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Eighth Amendment claim be **DISMISSED**.

---

[8] *But see Brown v. Bargery*, 207 F.3d 863, 867–68 (6th Cir. 2000) (finding sufficient to state an Eighth Amendment claim an inmate's allegations that the bunks in one of the prison's housing units were "improperly installed upside down, which would pose an unreasonable risk of future injury by causing inmates to fall from their bunks while asleep and by subjecting inmates to the hazards of rolling into sharp protruding mounting bolt studs").

[9] "Qualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." *Hydrick v. Hunter*, 669 F.3d 937, 939–40 (9th Cir. 2012). However, as set forth below, Plaintiff may not proceed on his claim for injunctive relief. (*See* Compl. at 10.)

### C. Injunctive Relief

Defendant further moves to dismiss Plaintiff's claim for injunctive relief on the grounds that Plaintiff's transfer to another prison renders his claim moot. (ECF No. 9 at 11.) Plaintiff's claim arises out of events occurring at RJD; however, Plaintiff has since transferred to the California Health Care Facility. (Compl. at 1.) Generally, when an inmate is transferred, an individual claim for injunctive relief against the inmate's former prison becomes moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). The reason is that the transferred inmate is no longer subject to the prison conditions or policies he challenges. *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012). Here, because Plaintiff's claim only challenges the conditions at RJD, and he does not allege an exception to the mootness doctrine, Plaintiff's claim under Section 1983 for injunctive relief is moot. Accordingly, the Court **RECOMMENDS** that Plaintiff's claim for injunctive relief be **DISMISSED**.

### D. Eleventh Amendment Immunity

Lastly, Defendant moves to dismiss Plaintiff's claim for damages against Defendant in her official capacity due to Eleventh Amendment immunity. (ECF No. 9 at 11–12.) Plaintiff has sued Defendant in both her official and individual capacities. (Compl. at 2.) In addition to injunctive relief, Plaintiff seeks damages. (*Id.* at 10.)

Under the Eleventh Amendment, "private individuals may not sue non-consenting state entities in federal court." *Kendrick v. Conduent State & Local Sols., Inc.*, 910 F.3d 1255, 1259 (9th Cir. 2018); *see also Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). California has not waived its Eleventh Amendment immunity with respect to claims brought under Section 1983 in federal court. *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999); *see also Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (CDCR is entitled to Eleventh Amendment immunity). A suit against a public employee in her official capacity is equivalent to a claim against her employer. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002). Accordingly, the Eleventh Amendment bars Plaintiff's Section 1983

claim for damages against Defendant in her official capacity. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016); *David v. Giurbino*, 488 F. Supp. 2d 1048, 1055 (S.D. Cal. 2007).[10]

Therefore, the Court **RECOMMENDS** that Plaintiff's claim for damages against Defendant in her official capacity be **DISMISSED**.

### E. Leave to Amend

The Court **RECOMMENDS** that Plaintiff be given leave to amend his claim for damages against Defendant in her individual capacity, as it is not absolutely clear from the complaint that the deficiencies in his Eighth Amendment claim cannot be overcome with amendment. *See Karim-Panahi*, 839 F.2d at 623–24; *James*, 221 F.3d at 1077.

## IV. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the District Court issue an Order: (1) adopting this Report and Recommendation; and (2) **GRANTING** Defendants' Motion to Dismiss (ECF No. 9) with leave to amend.

**IT IS SO ORDERED** that no later than **January 29, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///
///
///
///
///
///
///
///

---

[10] The Eleventh Amendment does not, however, bar claims for damages against state officials in their personal capacity. *Mitchell*, 818 F.3d at 442.

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 12, 2021**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 4, 2021

Hon. Jill L. Burkhardt
United States Magistrate Judge